SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Kim Allen v. Cape May County (A-49-19) (083295)**

**Argued October 14, 2020 -- Decided May 12, 2021**

**PATTERSON, J., writing for the Court.**

This is an appeal as of right based on a dissent in the Appellate Division in an action brought pursuant to the Conscientious Employee Protection Act (CEPA).

After defendant County of Cape May (County) declined to renew her contract as County Purchasing Agent, plaintiff Kim Allen brought this action against the County and defendant Gerald Thornton, the County Freeholder Director. Plaintiff alleged that defendants retaliated against her for engaging in CEPA-protected activity arising from two incidents.

The first incident related to the County's selection of workers' compensation counsel in 2014. Plaintiff testified that, after law firm Capehart & Scatchard submitted a bid to serve as counsel specifying only a proposed hourly rate, not the County's preferred per-case quote, Jeffrey Lindsay -- Thornton's stepson and the Director of Human Resources -- asked her whether a vendor could fax a new proposal page to supplement its bid. Plaintiff testified that she told Lindsay that it would be "illegal" to accept a substituted page. She confirmed at her deposition that "[t]here was no page switched out" in Capehart & Scatchard's proposal, and that nothing unlawful occurred. The report created by law firm Ballard Spahr in June 2014 upon its investigation of unrelated allegations by a different employee reflects that plaintiff asked to be interviewed and raised the issue of the Capehart & Scatchard proposal. Plaintiff conceded that she did not tell Thornton about her conversation with Lindsay concerning the proposal. Thornton testified that he read the report but did not remember whether it summarized any interviews with plaintiff.

The second incident related to the retention of Ballard Spahr. Plaintiff alleged that, at an April 2014 meeting with County counsel and other senior officials, she pointed out that the County's contract with Ballard Spahr was not the result of competitive bidding and was "non-fair" and "non-open." Plaintiff further contended that, in June 2014, she reviewed a draft contract and resolution regarding Ballard Spahr's invoice and advised County counsel they did not comply with competitive bidding requirements.

1

On July 14, 2014, County counsel was instructed to prepare a notice to plaintiff advising of the Board's intent to discuss her position. The notice was hand-delivered on July 16, 2014. That same day, plaintiff sent an e-mail to Thornton and others, expressing concern "with a [pay-to-play] practice" regarding the Ballard Spahr contract and resolution. On July 24, Thornton told plaintiff she would not be reappointed. Thornton testified that he considered plaintiff a "mediocre employee" because four County officials had complained about her performance.

In her complaint, plaintiff did not identify the provision that was the basis for either claim. The trial court analyzed plaintiff's claims as if brought under two CEPA provisions, N.J.S.A. 34:19-3(a) and -3(c). The court concluded that plaintiff engaged in CEPA-protected conduct under -3(a) when she informed the Ballard Spahr investigators about her discussion with Lindsay, but it found that defendants had established legitimate, non-retaliatory reasons for the decision not to renew her contract. The court entered summary judgment dismissing plaintiff's claims.

The Appellate Division reversed. The majority of the court found genuine issues of material fact as to the causal nexus between plaintiff's CEPA-protected activity and the County's decision not to reappoint her. The dissenting judge concurred with the trial court. Based on the dissent, defendants appealed as of right.

**HELD:** Because it is unclear whether defendants' motion for summary judgment was decided based on the CEPA provision on which plaintiff relies, the Court remands plaintiff's claim regarding the Capehart & Scatchard proposal to the trial court. As a matter of law, plaintiff presented no prima facie evidence of a causal nexus between her comments on the retention of Ballard Spahr and the County's decision not to renew her contract. The Court reinstates the order granting summary judgment as to that claim.

1. Before the Court, plaintiff confirmed that her claim premised on the Capehart & Scatchard proposal is based on N.J.S.A. 34:19-3(c), under which a plaintiff must prove that: (1) she reasonably believed her employer's conduct was violating a law or public policy; (2) she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and that action. Once a prima facie case is established, the employer must rebut the presumption of discrimination with a legitimate nondiscriminatory reason for the adverse employment action. Plaintiff has the ultimate burden of proving that the proffered reasons were a pretext. (pp. 16-19)

2. Here, it appears the trial court assumed plaintiff's conduct would constitute CEPA-protected conduct if it satisfied either N.J.S.A. 34:19-3(c) or -3(a), a separate provision. With no clarification from plaintiff as to the governing provision, the court held that her discussion with the Ballard Spahr investigator "constitutes CEPA-protected conduct under N.J.S.A. 34:19-3(a)," but did not review that communication under -3(c). As to the

2

remaining elements of the claim arising from the Capehart & Scatchard proposal, it is not clear whether the trial court relied on -3(a), -3(c), or both provisions.  (pp. 20-21)

3.  On remand, applying N.J.S.A. 34:19-3(c) and viewing the evidence in the light most favorable to plaintiff, the trial court should determine whether plaintiff presented prima facie evidence on each element of plaintiff's CEPA claim.  The trial court should first consider whether there is a genuine dispute of material fact as to whether plaintiff reasonably believed that Lindsay's inquiry was unlawful or contrary to a clear mandate of public policy.  If so, the court should decide whether there is a genuine issue of material fact as to whether plaintiff conducted a whistle-blowing activity, separately analyzing each alleged instance of CEPA-protected conduct arising from the Capehart & Scatchard bid.  If the court decides plaintiff engaged in CEPA-protected conduct under N.J.S.A. 34:19-3(c), it should determine whether plaintiff has presented prima facie evidence of a causal nexus between that activity and the County's decision not to reappoint her.  If so, the court should determine whether defendants have met their burden to prove that the County declined to reappoint plaintiff for legitimate, non-retaliatory reasons, or whether a genuine issue of material fact exists as to pretext.  (pp. 21-23)

4.  Plaintiff failed to present a prima facie showing of any causal connection between her statements about the retention of Ballard Spahr and Thornton's decision not to reappoint her.  Thornton's decision to recommend that the County not renew plaintiff's contract was made before plaintiff's e-mail was sent, and there is no evidence that Thornton was aware of either of plaintiff's previous comments to other County employees about the retention of Ballard Spahr.  The Court does not reach the question of pretext.  (pp. 23-26)

**AFFIRMED in part; REVERSED in part.  REMANDED to the trial court.**

**JUSTICE ALBIN** dissents from the remand of the claims related to the Capehart & Scatchard bid.  Justice Albin finds that, on the summary judgment record, there is sufficient evidence that defendant Cape May County and defendant Freeholder Director Gerald Thornton retaliated against Kim Allen by not renewing her contract as County Purchasing Agent because she disclosed suspected unlawful conduct by Thornton's stepson, the County's Director of Human Resources.  Viewing the evidence in the light most favorable to Allen, there is evidence to support all four elements of her CEPA claims under both N.J.S.A. 34:19-3(a) and (c), Justice Albin writes, and Thornton's claim that he had legitimate work-performance reasons for recommending Allen's non-renewal is a disputed issue of fact that should proceed directly to a jury.  Justice Albin sees no purpose in a remand but concurs in the remainder of the Court's decision.

**CHIEF JUSTICE RABNER and JUSTICES FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.  JUSTICE ALBIN filed a separate opinion, dissenting in part and concurring in part, in which JUSTICE LaVECCHIA joins.**

SUPREME COURT OF NEW JERSEY
A-49 September Term 2019
083295

Kim Allen,

Plaintiff-Respondent,

v.

Cape May County and Gerald Thornton,

Defendants-Appellants.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| October 14, 2020 | May 12, 2021 |

Jennifer B. Barr argued the cause for appellants (Cooper Levenson, attorneys; Jennifer B. Barr and Russell L. Lichtenstein, on the briefs).

Sebastian B. Ionno argued the cause for respondent (Ionno & Higbee, attorneys; Sebastian B. Ionno and D. Rebecca Higbee, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

This is an appeal as of right based on a dissent in the Appellate Division in an action brought by plaintiff Kim Allen pursuant to the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8.

1

After defendant County of Cape May (County) declined to renew plaintiff's contract, she brought this action against the County and defendant Gerald Thornton, the County Freeholder Director. Plaintiff alleged that defendants retaliated against her for engaging in CEPA-protected activity arising from two incidents: her discussion with another County official about a bid by a law firm, Capehart & Scatchard, P.A., to serve as the County's workers' compensation counsel, and her objection to the retention of a second law firm, Ballard Spahr, LLP, to conduct an investigation.

The trial court granted defendants' motion for summary judgment and dismissed plaintiff's CEPA claims. The Appellate Division reversed the grant of summary judgment, with one judge dissenting from the court's judgment.

For the reasons that follow, we affirm in part and reverse in part the Appellate Division's judgment. We remand the claim arising from the Capehart & Scatchard bid to the trial court for further proceedings, and we reinstate the trial court's entry of summary judgment dismissing plaintiff's claim relating to the retention of Ballard Spahr.

I.

A.

We summarize the facts based on the summary judgment record presented to the trial court.

2

1.

In 2008, the County appointed plaintiff to a three-year term as County Purchasing Agent. In 2011, the County appointed her to a second three-year term.

A year later, Thornton became the County Freeholder Director, and was the manager to whom plaintiff reported for the remainder of her employment with the County. Thornton's stepson, Jeffrey Lindsay, became the County Director of Human Resources, and oversaw the department that handled workers' compensation matters for the County. Plaintiff was not assigned to Lindsay's department, and he did not supervise her.

In late 2013 and early 2014, plaintiff prepared a request for proposal (RFP) for the selection of a law firm to represent the County in workers' compensation cases. According to plaintiff's deposition testimony, although the RFP provided that the County preferred that law firms submitting bids identify "a per case quote inclusive of all services up to and including first day of trial," the County also considered proposals that specified the law firm's hourly billing rates rather than a per-case quote.

On February 25, 2014, after Capehart & Scatchard submitted a bid specifying only a proposed hourly rate, not a per-case quote, Lindsay wrote plaintiff a message indicating that he "ha[d] a question" about the workers'

3

compensation RFP.  Plaintiff testified that Lindsay asked her whether a vendor could fax a new proposal page to supplement its bid.  Plaintiff testified that she told Lindsay that it would be "illegal" to accept a substituted page.

Following her conversation with Lindsay, plaintiff asked her predecessor as County Purchasing Agent, Gene Sicilia, to speak with Lindsay about his inquiry regarding the Capehart & Scatchard proposal.  Sicilia, who viewed Lindsay to be "simply exploring what could we or what could we not do," testified that he told Lindsay that the County could not substitute a page of a bid proposal, and that Lindsay "was fine with that."  Sicilia stated that he told plaintiff that Lindsay "was okay with it."

Lindsay testified at his deposition that he had considered his inquiry to plaintiff about Capehart & Scatchard's bid proposal to be resolved before Sicilia raised the issue with him, because that inquiry "was a question," and plaintiff had "answered it."  He stated that he did not discuss the matter with anyone other than plaintiff and Sicilia.

Plaintiff confirmed at her deposition that "[t]here was no page switched out" in Capehart & Scatchard's proposal, and that nothing unlawful occurred.

Asked at her deposition what illegal act Lindsay had committed, plaintiff replied that "[h]e asked a question that he shouldn't have asked."  In response to her counsel's question later in the deposition, she added that she considered

4

Lindsay's inquiry to constitute "[a] course of conduct" rather than simply a question because Lindsay "was in the evaluation stage with that, he had been through other RFPs, and he knows that [what] is presented is, is exactly what you evaluate against."

Notwithstanding her advice to Lindsay not to accept a substituted page in Capehart & Scatchard's proposal, plaintiff recommended that the County retain the firm as its workers' compensation counsel based on its "qualifications, experience, references and cost."

In early 2014, Barbara Bakley-Marino (Marino), County Counsel, asserted allegations against the County unrelated to plaintiff's allegations in this case. Assistant County Counsel James Arsenault retained Ballard Spahr to conduct an independent investigation of Marino's allegations on an expedited basis. Plaintiff asked to meet with Ballard Spahr, and one of the firm's investigators interviewed her.

According to the investigative report prepared by Ballard Spahr (Ballard Spahr Report), plaintiff raised with the investigator the issue of the Capehart & Scatchard RFP. The Ballard Spahr Report states that plaintiff told the investigator that Lindsay had "questioned" whether he could ask a vendor to fax a new proposal after the bid process had closed, that plaintiff had

5

responded "absolutely not," and that Marino had commented that Lindsay did not know local public contract law, which "scared" plaintiff.

The Ballard Spahr Report, submitted to the County Board of Freeholders (Board) on June 4, 2014, addressed the allegations raised by Marino. It acknowledged that plaintiff had asked to be interviewed and had told the Ballard Spahr investigators about her conversation with Lindsay regarding the RFP for workers' compensation counsel. The investigators stated that they "were unable to substantiate the allegations that Mr. Lindsay improperly handled the RFP relating to obtaining new outside counsel for workers' compensation claims" and that they viewed it to be "appropriate for Mr. Lindsay to seek counsel regarding processes with which he is unfamiliar."

Plaintiff conceded at her deposition that she did not tell Thornton about her conversation with Lindsay concerning the workers' compensation counsel RFP and that she did not advise Thornton that she was concerned about the question that Lindsay had asked her.

Thornton testified that he read the Ballard Spahr Report. Asked whether the Report contained a summary of any interviews or conversations with plaintiff, he responded, "[n]ot that I remember."

6

2.

On April 16, 2014, after her comments to the Ballard Spahr investigator, plaintiff attended a meeting with Arsenault and other senior County officials. Plaintiff alleged in her complaint that at that meeting, she was advised that Ballard Spahr had submitted an invoice in the amount of $40,000. She alleged that she pointed out to those present that the process that led to the contract was not the result of competitive bidding in response to an RFP, but was "non-fair" and "non-open."

Plaintiff further contended that on June 10, 2014, when she reviewed a draft contract and resolution prepared by Arsenault and his assistant regarding the payment of Ballard Spahr's invoice, she advised Arsenault that the draft contract did not comply with competitive bidding requirements and "Pay to Play Laws," and that it needed language reflecting that the agreement was "non-fair and non-open," as well as a "not to exceed" billing limit, in order to satisfy those requirements. She testified that in her presence, Arsenault "inserted non fair and non open in the agreement" and added a "not to exceed" billing limit, as she had advised. Plaintiff testified that the resolution's title, however, "did not have what I stated, the non fair, non open, or the amount."

Plaintiff contends that, despite Arsenault's advice that the allegations that Ballard Spahr was hired to investigate mandated an expedited

7

investigation, she continued to object to the firm's retention and told Arsenault that the County required the submission of a special form in the event that it hired a vendor on an emergent basis.

On July 14, 2014, the Clerk of the Board instructed Arsenault and his assistant to prepare a notice to plaintiff pursuant to Rice v. Union County Regional High School Board of Education, 155 N.J. Super. 64, 74 (App. Div. 1977) (Rice Notice). The Rice Notice advised plaintiff of the Board's intent to discuss in executive session, as permitted by N.J.S.A. 10:4-12(b)(7) and -12(b)(8), a personnel matter regarding her position, and it informed her of her right to request that the discussion instead take place in open session.[1]

The County provided the Rice Notice to plaintiff in a letter from Arsenault, which was hand-delivered to plaintiff on July 16, 2014.[2] At 1:38 p.m. on that same day, plaintiff sent an e-mail to Thornton and other County officials. She wrote that she was "concerned with a [pay-to-play] practice with Resolution 453-14 of 6/10/14, a Professional services agreement with Ballard Spahr, LLP and the lack of completion of the political contribution disclosure

---

[1] Plaintiff did not exercise her right to demand a discussion of her personnel matter in an open session of the Board.

[2] The record does not establish the exact time on July 16, 2014 that the County delivered the Rice Notice to plaintiff. Plaintiff testified that the County official designated to deliver the Rice Notice called her "right after lunch" on that day and that the notice was delivered "later [in the] afternoon."

8

form that was supposed to be completed 10 days prior to the award of the contract." Plaintiff wrote that she understood that "the form is being worked on now and will be sent out to [Ballard Spahr] to be completed." She stated that she was "just trying to avoid an audit of future contracts," noting that "[w]hen a contract with a professional services firm exceeds $17,500.00," but is "not awarded pursuant [t]o a fair and open process, there is a process to be followed for political contribution disclosures."

At her deposition, plaintiff testified that she did not meet with Thornton during the months preceding the decision not to renew her contract, and she identified no communication with Thornton about the County's contract with Ballard Spahr other than her July 16, 2014 e-mail to him.

Asked by Thornton to respond to plaintiff's e-mail, Arsenault explained in an e-mail to plaintiff,

> [i]n a perfect wor[ld] I agree wholeheartedly with your statements and appreciate the work you've done to ensure pay to play compliance. All I can say with regard to Ballard is that these were exceptional circumstances and we required the services of a law firm with impeccable credentials and no prior connection to the County in order to address very serious concerns. I am confident that Ballard will be able to demonstrate pay to play compliance with the submission of their certifications. While this will come beyond the timetable of the Act I also believe the ends justified the means in this circumstance. Certainly when time allows for a more deliberate approach to

9

retaining outside counsel, the wisdom of the policies
you've highlighted can't be questioned.

At her deposition, plaintiff disputed Arsenault's decision to retain Ballard Spahr rather than one of the firms already retained by the County, claiming that there was no need to circumvent the normal hiring process in order to investigate Marino's claims on an expedited basis. She admitted, however, that she did not know anything about the claims for which the County sought counsel or the employment law that governed those claims.

Plaintiff stated that on July 24, 2014, Thornton told her that he had not recommended her for reappointment and that the Board agreed with his determination. She added that on August 7, 2014, she received a letter formally notifying her that her contract, due to expire on August 26, 2014, would not be renewed.

Asked at her deposition to identify any evidence that the Ballard Spahr contract played a role in the decision not to reappoint her, other than evidence that she complained about the contract, plaintiff testified that "[i]t was in that July time period, and I received my Rice Notice. And next thing I know, I'm not being reappointed."

Explaining his decision not to renew plaintiff's contract, Thornton testified that he "had been going back and forth for probably a five or six month period" about the question of renewing plaintiff's contract before he

met with the Board regarding it. He stated that he had "reservations" about renewing plaintiff's contract because he considered her a "mediocre employee" based on "[t]he number of department heads that came to me and complained about her performance." Thornton identified four County officials who, he contended, had complained to him about plaintiff.

B.

1.

Plaintiff filed this action in the Law Division against the County and Thornton. She asserted a claim for "retaliatory discharge and/or retaliatory non-reappointment for having engaged in protected conduct" under CEPA. Plaintiff demanded compensatory and punitive damages, equitable reinstatement, attorneys' fees, and other relief.

In her complaint, plaintiff alleged that her response to Lindsay's inquiry about Capehart & Scatchard's bid proposal and her statement to the Ballard Spahr investigator about that inquiry constituted CEPA-protected conduct. She also contended that her advice to County officials that the Ballard Spahr contract with the County was "non-fair and non-open" and her advice to Arsenault to add language to the contract and resolution constituted CEPA-protected conduct. Plaintiff identified a provision of the Local Public Contracts Law, N.J.S.A. 40A:11-4.4(c), and generally cited the Pay-to-Play

11

Law, N.J.S.A. 19:44A-20.3 to -20.27, as statutes supporting her claims. She did not identify the provision of CEPA that was the basis for either claim.

After discovery, defendants moved for summary judgment. Plaintiff opposed defendants' motion, asserting that genuine issues of material fact precluded the grant of summary judgment.

The trial court analyzed plaintiff's claims as if they were brought under two CEPA provisions, N.J.S.A. 34:19-3(a) and N.J.S.A. 34:19-3(c).

With respect to plaintiff's allegations regarding the Capehart & Scatchard proposal to serve as the County's workers' compensation counsel, the trial court found a genuine issue of material fact as to "whether Lindsay's question was one of mere inquiry or a proposed course of conduct that violates New Jersey's Local Public Contract[s] Law."

Viewing the evidence in the light most favorable to plaintiff, the court concluded that plaintiff reasonably believed that Lindsay intended to violate the Local Public Contracts Law when he asked whether a vendor could substitute a page in a bid, and that plaintiff engaged in CEPA-protected conduct under N.J.S.A. 34:19-3(a) when she informed the Ballard Spahr investigators about her discussion with Lindsay. The court also concluded that plaintiff presented prima facie evidence that her objections to the retention of Ballard Spahr and the resolution reflecting the firm's hiring constituted CEPA-

12

protected conduct, and that plaintiff reasonably believed that the County violated the Pay-to-Play Law.

Granting all favorable inferences to plaintiff, the court found that she presented a prima facie claim of retaliation under CEPA, thus shifting the burden to defendants to establish that the County decided not to reappoint plaintiff for legitimate, non-retaliatory reasons.

The trial court agreed with defendants, however, that they met that burden to establish legitimate, non-retaliatory reasons for the County's decision not to renew plaintiff's contract. The court cited Thornton's testimony that department heads found it difficult to work with plaintiff, that Thornton did not always find plaintiff knowledgeable about public contract law, and that he had discussed with plaintiff the need to create working relationships with her coworkers. The trial court also noted plaintiff's misunderstanding of a statute during a dispute about a County-operated nursing home's pharmacy vendor contract and plaintiff's refusal to accept Marino's legal advice about the governing law in that incident.

The trial court concluded that plaintiff had failed to present facts that could establish by a preponderance of the evidence that Thornton's proffered reasons for not reappointing her constituted pretext, or that he decided not to

13

reappoint plaintiff in retaliation for CEPA-protected conduct. It entered summary judgment dismissing plaintiff's claims.

2.

Plaintiff appealed the trial court's grant of summary judgment. Defendants did not file a cross-appeal pursuant to Rule 2:4-2 to contest the trial court's findings that plaintiff engaged in CEPA-protected conduct.

The Appellate Division reversed the trial court's judgment and remanded the matter to the trial court for trial. The majority of the court disagreed with the trial court's conclusion that plaintiff failed to rebut defendants' showing that the County decided not to reappoint plaintiff for legitimate, non-retaliatory reasons. The majority found genuine issues of material fact as to the causal nexus between plaintiff's CEPA-protected activity and the County's decision not to reappoint her, and held that there was a factual dispute with respect to defendants' proffered reasons for that decision.

A member of the Appellate Division panel dissented from the judgment. The dissenting judge stated that even if plaintiff had presented a prima facie claim of CEPA-protected conduct, she failed to adduce sufficient proof that the County's stated reasons for her non-reappointment were pretextual. The dissenting judge concurred with the trial court's grant of summary judgment dismissing plaintiff's claims.

3.

Pursuant to Article VI, Section 5, Paragraph 1(b) of the New Jersey Constitution and Rule 2:2-1(a)(2), and based on the dissent in the Appellate Division, defendants appealed as of right the Appellate Division's judgment.

II.

Defendants urge the Court to reinstate the trial court's grant of summary judgment. They contend that plaintiff failed to present prima facie evidence that she was not reappointed because of her conversation with Lindsay about Capehart & Scatchard's proposal to the County and her report of that discussion to the Ballard Spahr investigators. Defendants argue that plaintiff similarly failed to present evidence supporting her claim that defendants retaliated against her because she objected to the retention of Ballard Spahr.

Plaintiff asserts that the Court should affirm the Appellate Division's judgment reversing the trial court's grant of summary judgment. She invokes contradictions in defendants' account of the events that led to the decision not to reappoint her. Plaintiff contends that there is a genuine issue of material fact with respect to her allegations that she was not reappointed in retaliation for CEPA-protected conduct.

III.

A.

We review de novo the trial court's grant of summary judgment, applying the same standard that governed the court's decision. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). That standard requires the court to review the evidence in the light most favorable to the non-moving party, and to enter summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995).

B.

"The Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)). The statute "shields an employee who objects to, or reports, employer conduct that the employee reasonably

16

believes to contravene the legal and ethical standards that govern the employer's activities." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014).

"CEPA's critical substantive provisions are contained in N.J.S.A. 34:19-3." Chiofalo v. State, 238 N.J. 527, 540 (2019). That section "sets forth the statute's essential prohibition of employer retaliation for an employee's protected activities, which are identified in three subsections." Ibid.

At oral argument before this Court, plaintiff confirmed that her CEPA claim premised on the Capehart & Scatchard proposal to serve as the County's workers' compensation counsel is based on N.J.S.A. 34:19-3(c). That provision bars an employer from taking "any retaliatory action against an employee" because the employee

> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;
> >
> > (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any

17

shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3(c).]

Thus, a plaintiff who premises a CEPA claim on N.J.S.A. 34:19-3(c) must prove that

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Dzwonar, 177 N.J. at 462.]

The plaintiff "need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy." Ibid. "Instead, the plaintiff simply must show that he or she '"reasonably believes"' that to be the case.'" Ibid. (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000)).

In a CEPA case premised on N.J.S.A. 34:19-3(c), "trial courts 'must be alert to the sufficiency of the factual evidence and to whether the acts

18

complained of could support the finding that the complaining employee's belief was a reasonable one,' and 'must take care to ensure that the activity complained about meets this threshold.'" Chiofalo, 238 N.J. at 543 (quoting Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 558 (2013)). "Vague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness are not the sort of things that the Legislature intended to be protected by CEPA." Battaglia, 214 N.J. at 559.

When a plaintiff alleges that the employer took an adverse employment action as a pretext for discrimination, "[o]nce a prima facie case is established, the burden of persuasion is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action." Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999). "Upon such a showing by the employer, plaintiff has the ultimate burden of proving that the employer's proffered reasons were a pretext for the discriminatory action taken by the employer." Ibid.

CEPA "is considered remedial legislation entitled to liberal construction, its public policy purpose to protect whistleblowers from retaliation by employers having been long recognized by the courts of this State." Lippman v. Ethicon, Inc., 222 N.J. 362, 378 (2015) (citing Abbamont, 138 N.J. at 431).

19

C.

1.

When the trial court and the Appellate Division considered plaintiff's CEPA claim arising from her conversation with Lindsay regarding the Capehart & Scatchard proposal and her communication with the Ballard Spahr investigators regarding that conversation, plaintiff had not yet disclosed that the claim is premised on N.J.S.A. 34:19-3(c). Plaintiff did not clarify the statutory basis for that claim until the appeal was argued before this Court.

Consequently, it appears that the trial court assumed that plaintiff's conduct would constitute CEPA-protected conduct for purposes of this action if it satisfied either N.J.S.A. 34:19-3(c) or N.J.S.A. 34:19-3(a), a separate CEPA provision that bars retaliation against an employee who "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer" that the employee reasonably believes to be unlawful, fraudulent, or criminal under the statutory terms. With no clarification from plaintiff as to the governing CEPA provision, the trial court held that plaintiff's discussion with the Ballard Spahr investigator "constitutes CEPA-protected conduct under N.J.S.A. 34:19-3(a)," but did not review that communication under N.J.S.A. 34:19-3(c). As to the remaining elements of plaintiff's claim arising from her discussions about the Capehart & Scatchard

20

proposal, it is not clear whether the trial court relied on N.J.S.A. 34:19-3(a), N.J.S.A. 34:19-3(c), or both provisions.

The Appellate Division majority generally cited both N.J.S.A. 34:19-3(a) and N.J.S.A. 34:19-3(c), and did not identify the specific provision on which it relied when it found that plaintiff had presented prima facie evidence as to each element of her claim and reversed the trial court's grant of summary judgment.

Because it is unclear whether defendants' motion for summary judgment was decided based on the CEPA provision on which plaintiff relies, we remand plaintiff's claim regarding the Capehart & Scatchard proposal to the trial court for additional summary judgment proceedings and, if summary judgment is not granted, for trial. Applying N.J.S.A. 34:19-3(c), and viewing the evidence in the light most favorable to plaintiff, the trial court should determine whether plaintiff presented prima facie evidence on each element of plaintiff's CEPA claim.[3]

---

[3] Our dissenting colleagues discern "no purpose" in this Court's remand of plaintiff's claim premised on the Capehart & Scatchard bid to the trial court. Post at ___ (slip op. at 2, 12). They dismiss plaintiff's counsel's proper clarification of the statutory basis for his client's claim as an "improvident concession" that we should nullify and ignore. Post at ___ (slip op. at 12 n.2). We view a remand to be essential to a fair consideration of plaintiff's claim under the provision of CEPA that governs this aspect of her case.

The trial court should first consider whether there is a genuine dispute of material fact as to whether plaintiff reasonably believed that Lindsay's inquiry was an "activity, policy or practice" that was unlawful, as defined by N.J.S.A. 34:19-3(c)(1), or contrary to a clear mandate of public policy, as defined by N.J.S.A. 34:19-3(c)(3). See Dzwonar, 177 N.J. at 462.

Should it find a genuine issue of material fact as to that issue, the court should decide whether there is a genuine issue of material fact as to the question whether plaintiff conducted a "whistle-blowing activity described in N.J.S.A. 34:19-3(c)." Ibid. As applied in this appeal, that provision requires plaintiff to show that she "[o]bject[ed] to, or refuse[d] to participate in" an "activity, policy or practice" of the employer that she reasonably believed was a violation of "either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy." Dzwonar, 177 N.J. at 462; accord N.J.S.A. 34:19-3(c). The trial court should separately analyze each alleged instance of CEPA-protected conduct arising from the Capehart & Scatchard bid -- plaintiff's conversation with Lindsay and her discussion with the Ballard Spahr investigator about that conversation -- under N.J.S.A. 34:19-3(c).

If the trial court decides that plaintiff engaged in CEPA-protected conduct under N.J.S.A. 34:19-3(c), it should determine whether plaintiff presented prima facie evidence that defendants conducted an adverse

22

employment action against her because of that CEPA-protected conduct. Dzwonar, 177 N.J. at 462. The trial court should decide whether plaintiff has presented prima facie evidence of a causal nexus between any CEPA-protected activity, as defined by N.J.S.A. 34:19-3(c), and the County's decision not to reappoint her. See ibid.

If the court concludes that plaintiff presented prima facie evidence of the elements of a retaliation claim, it should determine whether defendants have met their burden to prove that the County declined to reappoint plaintiff for legitimate, non-retaliatory reasons, or whether a genuine issue of material fact exists as to pretext. See Kolb, 320 N.J. Super. at 478; Depalma v. Bldg. Inspection Underwriters, 350 N.J. Super. 195, 213-14 (App. Div. 2002); Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 290-91 (App. Div. 2001).

If the trial court denies summary judgment after considering the evidence pursuant to N.J.S.A. 34:19-3(c), plaintiff's claim arising from her statements regarding Capehart & Scatchard's proposal should be determined at trial.

2.

Viewing the evidence in the light most favorable to plaintiff, we conclude that plaintiff failed to present a prima facie showing of any causal connection between her statements about the County's retention of Ballard

23

Spahr and Thornton's decision that the County would not reappoint her.[4] We concur with the dissenting judge in the Appellate Division that the trial court properly entered summary judgment dismissing plaintiff's claim based on the County's retention of Ballard Spahr.

The record establishes that Thornton made the decision that the County would not renew plaintiff's contract, and set in motion the formal process to implement that decision, no later than July 14, 2014, when the Clerk of the Board instructed Arsenault and his assistant to prepare and send the Rice Notice to plaintiff. By virtue of its timing, plaintiff's July 16, 2014 e-mail to Thornton and others, in which she raised concerns about the retention of Ballard Spahr, could not have played any role in Thornton's decision to recommend that the County not renew plaintiff's contract.[5] That decision was made before the e-mail was sent.

---

[4] Plaintiff has not indicated whether her claim based on the retention of Ballard Spahr is premised on N.J.S.A. 34:19-3(a) or 34:19-3(c). Because we determine that claim based on the issue of causation, not on the question whether plaintiff presented a prima facie showing that she engaged in CEPA-protected conduct, it is immaterial to our decision whether the claim is predicated on N.J.S.A. 34:19-3(a) or N.J.S.A. 34:19-3(c).

[5] It is unclear which of the two events that occurred on July 16, 2014 -- plaintiff's receipt of her Rice Notice by hand delivery, or her 1:38 p.m. e-mail to Thornton stating her concerns about the contract with Ballard Spahr -- occurred first. However, Thornton's decision to issue the Rice Notice -- notice required by statute as a preliminary step toward the nonrenewal of her contract -- indisputably preceded that e-mail by two days.

Moreover, there is no evidence that when Thornton decided that plaintiff's contract would not be renewed, he was aware of either of plaintiff's previous comments to other County employees about the retention of Ballard Spahr.

Nothing in the record suggests that plaintiff's April 16, 2014 advice to Arsenault and others regarding the process to be followed for the retention of Ballard Spahr were repeated to Thornton; to the contrary, deposition testimony suggests that plaintiff's conversation with Arsenault was nothing more than a routine discussion between a County employee and the County's legal counsel. Despite extensive discovery in which several current and former County employees were deposed, there is no evidence that anyone brought those comments to Thornton's attention.

The same is true for plaintiff's advice to Arsenault on June 10, 2014 about language that should be included in the draft resolution and contract with Ballard Spahr. By plaintiff's own account, after she commented on the Ballard Spahr contract and the Board resolution regarding that contract, Arsenault made the language changes in the contract that she suggested but did not alter the draft resolution. Plaintiff makes no claim that she told Thornton about that conversation or otherwise addressed the issue with him prior to July 16, 2014. Moreover, she presents no evidence that anyone relayed her comments on the

25

draft contract and resolution language to Thornton. Indeed, in plaintiff's July 16, 2014 e-mail to Thornton, she appears to inform him for the first time that she had concerns about the process by which the County retained Ballard Spahr.

We therefore conclude that as a matter of law, plaintiff presented no prima facie evidence of a causal nexus between her comments on the retention of Ballard Spahr and the County's decision not to renew her contract. We do not reach the question whether the evidence supported a finding that the County's stated reasons were a pretext for a retaliatory decision. We reinstate the trial court's order granting summary judgment with respect to plaintiff's claim based on the County's retention of Ballard Spahr.

## IV.

The judgment of the Appellate Division is affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings with respect to plaintiff's claim regarding Capehart & Scatchard's bid proposal to serve as the County's workers' compensation counsel, and for the entry of partial summary judgment dismissing plaintiff's claim regarding the County's retention of Ballard Spahr.

CHIEF JUSTICE RABNER and JUSTICES FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN filed a separate opinion, dissenting in part and concurring in part, in which JUSTICE LaVECCHIA joins.

26

Kim Allen,

Plaintiff-Respondent,

v.

Cape May County and Gerald Thornton,

Defendants-Appellants.

JUSTICE ALBIN, dissenting in part and concurring in part.

The Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8, protects an employee from retaliation from her employer when she reports to a public body what she reasonably believes to be a violation of a law. On the summary judgment record before us, plaintiff Kim Allen has presented sufficient evidence that defendant Cape May County and defendant Freeholder Director Gerald Thornton did not renew her contract as County Purchasing Agent because she disclosed suspected unlawful conduct by Thornton's stepson, the County's Director of Human Resources.

Viewing the evidence in the light most favorable to Allen at this stage, see Gormley v. Wood-El, 218 N.J. 72, 86 (2014), the Freeholder Director's stepson, Jeffrey Lindsay, suggested that Allen unlawfully alter the bid on a County contract to benefit a law firm to Lindsay's liking. Allen refused to do

1

so.  Allen provided information about this occurrence to a law firm specially designated to investigate allegations of wrongdoing in the County government. That investigation led to a report that discussed Allen's disclosure about Lindsay -- a report reviewed by Lindsay's stepfather, Freeholder Director Thornton.  Just over a month after the issuance of the report, Thornton recommended the non-renewal of Allen's contract.

Allen has presented a case of retaliation in violation of N.J.S.A. 34:19-3(a) and (c).  Thornton's claim that he had legitimate work-performance reasons for recommending Allen's non-renewal is a disputed issue of fact. Allen has a right to have a jury decide her case against Thornton and the County.  No purpose will be served by a remand to the trial court for further consideration of those CEPA claims.

I therefore respectfully dissent from the majority's remand order on this point and would affirm the Appellate Division.  I concur with the majority that the remainder of the Appellate Division's opinion must be reversed.

## I.

Kim Allen was serving her second three-year term as County Purchasing Agent of Cape May County when Thornton became the County Freeholder

2

Director in 2012.[1]  In that role, Thornton became Allen's direct supervisor.  In 2013, Thornton's stepson, Lindsay, became the County Director of Human Resources.  Thornton's wife -- Lindsay's mother -- also worked as a nursing home administrator for the County.

In late 2013 and early 2014, Allen prepared a request for proposal (RFP) to solicit bids from law firms to represent the County in workers' compensation matters.  The County's expressed preference was to pay attorney's fees on a per-case basis rather than a per-hour basis.  Capehart & Scatchard, P.A. (Capehart) -- a law firm that Lindsay "liked" -- submitted a bid for the contract on a per-hour basis.  Lindsay asked Allen whether Capehart could fax him a new fee quote on a per-case basis to replace the one already submitted.  Switching the quote page after the submission of a bid, however, is a violation of the public contracts law.  See, e.g., George Harms Constr. Co., Inc. v. Tpk. Auth., 137 N.J. 8, 37-38 (1994) (noting that "[a]voidance of any potential for contract manipulation is a central theme of all public-bidding doctrine," and that prohibiting after-the-fact submissions is intended "to prevent any possibility of favoritism").

---

[1] The facts presented here are based on the summary judgment record, which includes the deposition testimony of Allen, Thornton, and others.

Allen was "totally unnerved" by the question posed by Lindsay, who had experience with past RFPs and told her he had reviewed the relevant provisions of the public contracts law. As she stated in her deposition testimony, "Lindsay was aware of the law. He said he had reviewed it." She perceived Lindsay's question not as an innocent inquiry but as a proposal that suggested a course of unlawful conduct -- "to swap out a page" on a bid. She told Lindsay it would be illegal to do so. Critical to this case and to Allen, Lindsay was not a low-level employee -- he was the head of human resources and the Freeholder Director's stepson.

In May 2014, Thornton evidently approved Allen's attendance at a national conference at a cost of approximately $1,500 to the County. Up to that point, Allen had never received a documented negative job performance evaluation or discipline of any sort. Nor, according to Allen, had Thornton ever expressed dissatisfaction to her about her performance as the County Purchasing Agent.

During this time period, Cape May County Counsel Barbara Bakley-Marino forwarded a complaint to the Freeholder Board about gender discrimination and nepotism in the County government. In particular, in her deposition testimony, Bakley-Marino referenced the pay disparity between her and her male counterparts, and she stated that she could not take her concerns

4

about Lindsay to the Freeholder Director because he was supervising his stepson. Bakley-Marino's complaint led the Freeholder Board to hire the law firm of Ballard Spahr LLP to conduct an investigation into her allegations.

As part of the investigation, a Ballard Spahr attorney interviewed Allen. A summary of that interview appeared in Ballard Spahr's June 4, 2014 report filed with the Freeholder Board. During that interview, Allen recounted that Lindsay "questioned whether he could ask a vendor to fax a new proposal after the bid process had closed, and [she] said absolutely not." Additionally, Bakley-Marino told Ballard Spahr that she "had concerns regarding Mr. Lindsay's handling of the RFP for workers' compensation claims." Bakley-Marino reported "that after the bids had come in, Mr. Lindsay was going to have one firm resubmit its bid . . . . [She] and Ms. Allen told Mr. Lindsay that he could not do that."

Freeholder Director Thornton reviewed that report as the head of the County government. Ballard Spahr indicated in its report that it was "unable to substantiate" that Lindsay had engaged in any wrongdoing. Nevertheless, Allen's allegation against Thornton's stepson presumably did not go unnoticed.

Just six weeks later, as Allen's second term as County Purchasing Agent neared an end, Thornton decided not to recommend her for reappointment.

5

Thornton justified his decision based on his conclusion that Allen was "a mediocre employee." The Freeholder Board followed Thornton's recommendation and did not reappoint her.

In Allen's mind, her report to Ballard Spahr about the Freeholder Director's stepson -- passed along to the Freeholder Board -- played a role in her non-reappointment. In short, Allen claims that she was victim of retaliation in violation of CEPA because she had the temerity to give an honest account of the conduct of the Freeholder Director's stepson.

II.

A.

CEPA "is a civil rights statute . . . [whose] purpose is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994). The statutory scheme makes clear that retaliation against a conscientious employee who has the courage to call attention to the unlawful conduct of the employer is repugnant to this state's public policy. Id. at 418, 431. Because CEPA is remedial legislation, it "should be construed liberally to effectuate its important social goal." Id. at 431.

6

CEPA prohibits an employer from "tak[ing] any retaliatory action against an employee" who "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law." N.J.S.A. 34:19-3(a)(1). It similarly prohibits retaliatory action taken against an employee who "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes . . . is in violation of a law." N.J.S.A. 34:19-3(c)(1).

To establish a prima facie CEPA claim under either subsection 3(a) or 3(c), a plaintiff is required to show:

> (1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law;
>
> (2) that he or she performed whistle-blowing activity described in N.J.S.A. 34:19-3(a), (c)(1) or (c)(2);
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999).]

If a plaintiff makes a prima facie showing, the burden then shifts "to the employer to rebut the presumption of [retaliation] by articulating some

7

legitimate [non-retaliatory] reason for the adverse employment action." Id. at 478. In the end, the "plaintiff has the ultimate burden of proving that the employer's" stated reasons for an employment action, such as non-renewal of an employment contract, were "a pretext for the [retaliatory] action taken by the employer." Ibid. To survive a defendant's motion for summary judgment, however, a plaintiff need only show that "a reasonable factfinder could rationally find" the employer's purported non-pretextual reasons for taking the employment action "unworthy of credence." Ibid. (internal quotation marks and citation omitted).

### B.

Viewing the facts in light of our permissive summary judgment standard, Allen "reasonably believed" that Lindsay's question about swapping out a bid page was not a mere inquiry but an indication of a desired course of action in violation of the public contracts law. After all, in Allen's mind, Lindsay was both a department head and an attorney, and therefore knowledgeable about the public bidding laws.

The character and thrust of a question can be understood only by its context. When a course of action is cloaked in the form of a question, particularly by a person wielding power in an employment context, the employee on the receiving end typically hears the message. Allen testified that

8

she got the message and pushed back, telling Lindsay that switching a bid page would be illegal.

But Allen did not just object to the inquiry by Lindsay -- who Allen believed knew or should have known the answer to the question he posed -- she also disclosed the exchange she had with Lindsay to an agent of the Freeholder Board. Allen made her disclosure to a lawyer for Ballard Spahr, the firm retained by the Freeholder Board to investigate nepotism in the County government. Ballard Spahr then published Allen's whistleblowing comments about Lindsay in its report to the Freeholder Board. That report went to Allen's supervisor, Freeholder Director Thornton. See N.J.S.A. 34:19-2(d).

Certainly, a rational factfinder does not have to ignore filial relationships and family bonds in gauging Thornton's response. A rational factfinder could infer that Thornton did not respond well to what he likely perceived as Allen's trashing of his stepson in an official report.

A rational factfinder, moreover, could conclude that the timing of the Freeholder Board's receipt of the Ballard Spahr report containing Allen's disclosures and Thornton's decision not to recommend her reappointment as County Purchasing Agent was no mere coincidence. A reasonable inference may be drawn from the temporal proximity between a whistleblowing activity

and an adverse employment action. See Maimone v. City of Atlantic City, 188 N.J. 221, 237 (2006). The non-renewal of Allen's contract came almost directly on the heels of the Ballard Spahr report that contained Allen's disclosure.

At this stage, Thornton's asserted non-pretextual reasons for Allen's non-reappointment -- that he was mulling for months whether to let her go and that others had voiced concerns about her interpersonal skills -- do not have to be accepted blindly. Not a single negative evaluation appeared in Allen's personnel file; she had never been disciplined; and Thornton evidently had recently sent Allen to a national conference at the County's expense, hardly a step one would take for an employee with no long-term future.

Ultimately, a jury must decide whether Thornton had justifiable and legitimate reasons for not recommending Allen's reappointment or whether Thornton provided post-hoc rationalizations as a cover for retaliating against Allen for her whistleblowing comments about his stepson.

### III.

Allen's CEPA complaint did not specify the particular subsections of N.J.S.A. 34:19-3 on which she relied in pursuing her retaliation claims against Freeholder Director Thornton and Cape May County. Nevertheless, when the trial court decided the summary judgment motion, it rendered an opinion on

both subsections 3(a) and 3(c), indicating that theories of liability under those provisions were before the court. The court noted that Allen asserted that "she engaged in CEPA-protected conduct when she directly told Mr. Lindsay that he could not 'switch out' a page of a bid proposal and objected to that action," see N.J.S.A. 34:19-3(c), and that "she engaged in CEPA-protected conduct a second time when she discussed the incident with investigators from Ballard Spahr, LLP," see N.J.S.A. 34:19-3(a). The court specifically found that Allen's "discussion with an investigatory firm hired by [d]efendants constitutes CEPA-protected conduct under N.J.S.A. 34:19-3(a)." It also found that Allen had "articulated a prima facie claim of retaliation under CEPA."

Nevertheless, the court granted summary judgment to defendants Cape May County and Thornton, determining that Allen had failed to show that defendants' proffered reasons for not reappointing her were "pretextual" and that "a causal connection" existed between her "CEPA-protected activity and the adverse employment action."

Allen appealed the trial court's finding of no causation. The Appellate Division majority reversed the grant of summary judgment and held that, at this juncture, Allen is entitled to the favorable inferences to be drawn from the record and to have the contested facts decided by a jury. Because defendants had not filed a cross appeal, the Appellate Division majority declined to

11

address defendants' arguments that the trial court had erred in finding that Allen had established the first two elements of her prima facie retaliation claims.

"When reviewing a motion for summary judgment, we apply the same standard as the trial court: we view the evidence in the light most favorable to the non-moving party" -- in this case, that is Allen. See Estate of Narleski v. Gomes, 244 N.J. 199, 205 (2020). By that standard, there is evidence to support all four elements of Allen's CEPA claims under both N.J.S.A. 34:19-3(a) and (c). The contested issues of fact must be decided by a jury.[2]

For the reasons expressed, I see no purpose in a remand, and therefore I respectfully dissent from that aspect of the majority's decision.

---

[2] In his brief to this Court, Allen's appellate counsel focused primarily on the issue of causation, which was the main point that divided the Appellate Division majority and dissent. At oral argument before this Court, when pressed to identify the subsection of N.J.S.A. 34:19-3 on which he was relying, he made an improvident concession, stating subsection (c). Allen should not be held to that concession because an independent review of the record shows that she has a viable claim under subsection (a).

12